IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LLOYD GOODNOW,

    Plaintiff,

v.                                    CASE NO. 1:20-cv-257-RH-GRJ

THIRD CONG. DIST. OF FLA.,

    Defendant.
_____/

# REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss. ECF No. 5. Plaintiff has filed a response in opposition. ECF No. 6. The motion, therefore, is ripe of consideration. For the reasons discussed below, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss, ECF No. 5, should be **GRANTED**, and Plaintiff's Complaint, ECF No. 1-1, should be **DISMISSED** for lack of jurisdiction.

## I. BACKGROUND

This case arises from a civil action Plaintiff filed in Levy County Court on October 5, 2020. ECF No. 1-2 at 2. Plaintiff avers in his "Statement of Claim" that he is suing Defendant for "[w]ork done and materials furnished by [P]laintiff to [D]efendant" in the amount of $8,000. *Id.*

Plaintiff's exhibits to the "Statement of Claim," *id.* at 6–60, reveal the dispute at hand.  In December 2014, Ted Yoho, as the United States Representative for Florida's Third Congressional District, allegedly engaged Plaintiff's company, Goodnow Frontier Security Services, for "assessments of Muslim terrorist training camps."  Id. at 5; *see also id.* at 46.  In January 2015, Plaintiff traveled to various locations outside of the Third Congressional District (Maryland, New York, and Tennessee) to conduct surveillance and collect intelligence.  Id. at 11–15.  Although, in February 2017, Plaintiff represented to various officials in former President Donald Trump's Cabinet that he conducted this surveillance for "love of country," *id.* at 18, 20, 22, he began requesting compensation for his company's supposed engagement in September 2019, *id.* at 52–55, 60.  Plaintiff endeavored over the course of the next 10 months to receive payment from the United States by contacting former Rep. Ted Yoho's office, the Office of Management and Budget, the Department of Treasury, and the White House.  *Id.* at 60.

On November 4, 2020, Defendant removed this action from Levy County Court to this federal court (the United States District Court for the Northern District of Florida) pursuant to the federal officer removal statute,

2

28 U.S.C. § 1442(a)(1). ECF No. 1.[1] As Judge Rodgers recently explained:

> The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is an exception to the well-pleaded complaint rule, allowing removal of a civil action commenced in state court "against or directed to ... any officer (or any person acting under that officer) of the United States or of any agency thereof ... for or relating to any act under color of such office," regardless of whether a federal question appears on the face of the complaint. *See also Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). Importantly, unlike the general removal statute, 28 U.S.C. § 1441, which must be strictly construed in favor of remand, *see Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999), the federal officer removal statute is "liberally construed" in favor of granting federal officers and agencies (and those acting under federal officers and agencies) access to a federal forum in which to litigate the merits of defenses arising from their official duties, *see Watson v. Philip Morris, Co., Inc.*, 551 U.S. 142, 147 (2007); *Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("Th[e] policy [of providing the protection of a federal forum to federal officers] should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).").

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 365617, at *2 (N.D. Fla. Jan. 22, 2020). Plaintiff has not filed any motion to remand alleging a procedural defect in the removal process or for lack of subject-matter jurisdiction. 28 U.S.C. § 1447(c).[2]

---

[1] "Removal is appropriate pursuant to 28 U.S.C. § 1442(a), inasmuch as (1) the claims brought against Congressman Yoho arise from his official capacity as a Member of Congress, and (2) Congressman Yoho can raise one or more colorable federal defenses to the Complaint, including but not limited to, sovereign immunity." ECF No. 1 at 2.

[2] The federal officer removal statute confers jurisdiction as well as the right of removal. *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *Niagara Mohawk Power Corp. v. Bankers Trust Co. of Albany, N.A.*, 791 F.2d 242, 244 (2d Cir. 1986).

## II.  DISCUSSION

Defendant argues that Plaintiff's Complaint is barred by sovereign immunity or, alternatively, should be dismissed for failure to state a claim. ECF No. 5 at 13–25.  Relevant here, Defendant's sovereign immunity argument proceeds in three discrete steps.  First, Plaintiff's claim is actually one against the duly elected United States Representative for Florida's Third Congressional District.[3]  Second, "Members of Congress" acting in their official capacities enjoy the same sovereign immunity as if Plaintiff sued directly the United States.  Third, the only waiver to sovereign immunity for a breach of contract claim against the United States for less than $10,000, in the so-called "Little Tucker Act," 28 U.S.C. § 1346(a)(2), does not apply because this case was removed from state court (and, thus, not initially filed in district court).  Plaintiff's response merely states his objection to the motion to dismiss and does not elaborate on any legal or factual opposition to Defendant's arguments.  ECF No. 6.  The Court concludes that Defendant enjoys sovereign immunity from Plaintiff's sole breach of contract claim and will address in turn each of Defendant's contentions.

---

[3] Since this case was filed, Rep. Yoho's elected term concluded and Kathryn "Kat" Cammack was sworn in to represent Florida's Third Congressional District in the 117th United States Congress.

First, Plaintiff has failed to name the proper defendant for his breach of contract claim. Florida's Third Congressional District is not an entity capable of being sued. Fed. R. Civ. P. 17(b); *Blackmar v. Guerre*, 342 U.S. 512, 515 (1952) ("When Congress authorizes one of its agencies to be sued *eo nomine*, it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity."); *Castleberry v. Alcohol, Tobacco, and Firearms Div. of the Treasury Dep't of the U.S.*, 530 F.2d 672, 673 n.3 (5th Cir. 1976) ("This entity is not suable, since the Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized either or any of them to be sued *eo nomine*.").

Instead, Plaintiff's claim is one against the duly elected United States Representative for Florida's Third Congressional District. This is obvious from Plaintiff's allegation that Rep. Yoho failed to pay Plaintiff for services performed related to Rep. Yoho's elected office. Moreover, this is an "official capacity" suit because, as explained above, Plaintiff is seeking payment from public funds, namely the United States Treasury. *See Tanvir v. Tanzin*, 894 F.3d 449, 458–59 (2d Cir. 2018) ("The Supreme Court has stated that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. In an

5

official capacity suit, the real party in interest is the governmental entity and not the named official. By contrast, individual capacity suits seek to impose individual liability upon a government officer for her actions under color of law. Any damages awarded in an individual capacity suit "will not be payable from the public fisc but rather will come from the pocket of the individual defendant.").

Second, Defendant may invoke the common law doctrine of sovereign immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also King v. U.S. Gov't*, 878 F.3d 1265, 1267 (11th Cir. 2018). "[S]overeign immunity extends to the United States Congress when it is sued as a branch of government." *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds*, *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020) (citing *Keener v. Congress of U.S.*, 467 F.2d 952, 953 (5th Cir. 1972)). Consequently, sovereign immunity "forecloses … claims against the House of Representatives and Senate as institutions," as well as Members "acting in their official capacities." *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007); *see also Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305, 310 (D.D.C. 2020). Because this is such a

claim—one against a Member of Congress in an official capacity—it must yield to the United States' sovereign immunity.

Third, and finally, the United States' waiver of sovereign immunity under the Little Tucker Act does not apply. The Court must examine whether the United States has waived sovereign immunity for suits of this kind and, if so, whether the United States has consented to be sued in this Court. *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 178 (D.D.C. 2007). Although the United States waived sovereign immunity in the Little Tucker Act for any civil action or claim against it "not exceeding $10,000 in amount founded … upon any express or implied contract with the United States," only federal district courts (such as this one) and the United States Court of Federal Claims have "original jurisdiction" over such claims. 28 U.S.C. § 1346(a)(2); *see also United States v. Bormes*, 568 U.S. 6, 16 n.2 (2012). The problem for Plaintiff is that he initially filed this suit in state court, and it is only before the Court under the federal removal statue, 28 U.S.C. § 1442(a)(1). ECF No. 1.

It has been well-established for nearly a century that "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." *Lambert Run Coal Co. v. Baltimore & Ohio R.R.*, 258 U.S. 377, 382 (1922). That is, "[i]f the state court lacks jurisdiction of the

subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Id.* This doctrine of derivative jurisdiction applies here. There is no question that the Levy County Court did not have jurisdiction over Plaintiff's claim under the Little Tucker Act—because it is neither a federal district court or the United States Court of Federal Claims—so this Court has none upon removal, even though the Court would have had original jurisdiction over Plaintiff's claim if it were initially filed here. *See Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012) ("Because the North Carolina state court did not have subject-matter jurisdiction over this case, the district court did not acquire jurisdiction by reason of the case's removal under 28 U.S.C. § 1442(a) from the state court to federal court."); *Lombardi v. United States*, No. 15-CIV-1047-A, 2016 WL 1604492, at *3 (W.D.N.Y. Apr. 22, 2016) ("[T]he waiver of sovereign immunity in the Little Tucker Act is exclusive to claims brought in federal district courts or the Court of Federal Claims. The Court therefore lacks derivative jurisdiction over a Little Tucker Act postage-refund claim removed from state court pursuant to 28 U.S.C. § 1442(a)(1)."); *Burks v. Wilson,* No. 3:14-cv-532-HEH, 2014 WL 7240242, at *3 n.16 (E.D. Va. Dec. 19, 2014) (concluding that granting leave to amend

for Plaintiff to bring his claim within the ambit of the Little Tucker Act would be futile because the Court lacked derivative jurisdiction).

In sum, Members of Congress sued in an official capacity enjoy sovereign immunity, and the only relevant waiver of sovereign immunity under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), does not apply upon removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because the initial state court did not have original jurisdiction over Plaintiff's claim.  Therefore, Plaintiff's Complaint is due to be dismissed because the Court lacks jurisdiction over his breach of contract claim.[4]

### III.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss, ECF No. 5, should be **GRANTED**, and Plaintiff's Complaint, ECF No. 1-1, should be **DISMISSED** for lack of jurisdiction.

**IN CHAMBERS** this 17th day of March 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy**

---

[4] Having identified this jurisdictional defect, the Court will not address Defendant's alternative argument that Plaintiff fails to plead a cognizable breach of contract claim.

9

**thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.